UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

|  |  |  |
|---|---|---|
| | * | |
| BACKOFF, LLC and NUTEC, INC., | * | |
| | * | |
| *Plaintiffs,* | * | **DISTRICT JUDGE - UNASSIGNED** |
| | * | |
| v. | * | **MAGISTRATE JUDGE KAY** |
| | * | |
| SAMOCO OIL TOOLS, INC., | * | **CIVIL ACTION NO. 2:18-CV-00494** |
| | * | |
| *Defendant.* | * | |
| | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

I.   BACKGROUND ........................................................................................................... 1

II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE
      DECLARATORY JUDGMENT ACT, 28 U.S.C. §2201 ...................................... 3

   A. Applicable Law ................................................................................................ 3

   B. Argument ......................................................................................................... 5

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER SAMOCO ............................ 10

IV.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
      BE GRANTED ....................................................................................................... 17

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Akro Corp. v. Luker,* 45 F.3d 1541 (Fed. Cir. 1995) ..................................................... 16

*Arris Grp., Inc. v. British Telecommc'ns, PLC,* 639 F.3d 1368 (Fed. Cir. 2011) .......................... 9

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................... 17, 18

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd,* 566 F.3d 1012 (Fed. Cir. 2009) ........ 11, 12, 14, 15

*Avocent Huntsville Corp. v. Aten Int. Co. Ltd.,* 552 F.3d 1324 (Fed. Cir. 2008) ................. passim

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007) ............................... 17, 18

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356 (Fed. Cir. 2006) ............... 16

*Campbell Pet Co. v. Miale,* 542 F.3d 879 (Fed. Cir. 2008) .......................................................... 16

*Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.,* 756 F.3d 327 (5th Cir. 2014) ........................ 18

*Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986) ................................................................... 5

*Danisco U.S. Inc. v. Novozymes A/S,* 744 F.3d 1325 (Fed. Cir. 2014) ...................................... 4, 9

*Diaz v. Castro*, 122 F. Supp. 3d. 603 (S.D. Tex. 2014) ............................................................. 4, 5

*Dickson Marine, Inc. v. Panalina, Inc.,* 179 F.3d 331 (5th Cir. 1999) ........................................ 11

*Electrosource, Inc. v. Horizon Battery Techs., Ltd,* 176 F.3d 867 (5th Cir. 1999) ...................... 11

*Evans v. Tubbe*, 657 F.2d 661 (5th Cir.1981) ................................................................................. 5

*Ferring, B.V. v. Watson Labs., Inc.,* Civ. Nos. 3:11-cv-481, 3:11-cv-485, 3:11-cv-853 & 3:11-cv-854, 2012 WL 607539 (D. Nev. Feb. 24, 2012) ...................................................... 19

*Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327 (5th Cir. 2004) ..................... 16

*Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256 (11th Cir. 1997) ...................................... 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) .................................. 14

*Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351 (Fed. Cir. 2002) .................................................... 15

*Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*, 2014 WL 4222902 (D. Del. 2014) ........... 9

*In re Bill of Lading Transmission and Processing System Patent Litigation,* 681 F.3d 1323 (Fed. Cir. 2012) .......................................................................................................................... 18

*In re Blue Water Endeavors, LLC,* 2011 WL 52525 (Bankr. E. D. Tex. 2011) ........................... 5

*Internet Media Corp. v. Hearst Newspapers, LLC,* No. 10-690, 2012 WL 3867165 (D. Del. Sept. 6, 2012) ......................................................................................................................... 19

*Irwin v. Veterans Admin.*, 874 F.2d 1092 (5th Cir.1989) ........................................................... 5

*Luv N' Care v. Insta-Mix, Inc.,* 438 F.3d 465 (5th Cir. 2006) ................................... 10, 11, 12, 14

*McFadin v. Gerber,* 587 F.3d 753 (5th Cir. 2009) ..................................................................... 15

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) ....................................................... 3, 4

*Memory Control Enterprise, LLC v. Edmunds.com, Inc.,* No. CV 11-7658, 2012 WL 681765 (C.D. Cal. Feb. 8, 2012) ..................................................................................................... 19

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir.1981) ................................................................ 5

*Plumtree Software, Inc. v. Datamize, LLC,* 473 F.3d 1152 (Fed. Cir. 2006) ............................... 9

*Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329 (Fed. Cir. 2008) ..................................... 4

*Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785 (Fed. Cir. 2011) .................................... 12, 15

*Red Wing Shoe,* 148 F.3d 1355 (Fed. Cir. 1998) ...................................................................... 15

*Resolution Inc. of Del. v. Medical Bridges, Inc.,* Case No. 2:11-cv-02475-MLCF-SS, slip op. (E.D La. Sept. 20, 2012) .............................................................................................. 11, 14

*Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876 (N.D. Tex. 1998), aff'd, 199 F.3d 279 (5th Cir. 2000) ........................................................................................................................ 5

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) .............................. 4

*Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266 (5th Cir. 2006) ........................................ 11

*Solenoid Devices, Inc., v. Ledex, Inc.,* 375 F.2d 444 (9th Cir. 1967) .......................................... 8

*Teva Pharms. USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330 (Fed. Cir. 2007) ..... 9

**Statutes**

28 U.S.C. §2201 .......................................................................................................................... 3

35 U.S.C. §101 ............................................................................................................................ 18

35 U.S.C. §102 ...................................................................................................... 18

35 U.S.C. §103 ...................................................................................................... 18

35 U.S.C. §112 ...................................................................................................... 18

LA. REV. STAT. ANN. § 13:3201(B) ...................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 4

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 17

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 18

Fed. R. Civ. P. 8(a) ................................................................................................ 19

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 17

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, Samoco Oil Tools, Inc. ("Defendant" or "Samoco"), through undersigned counsel, respectfully submits this "*Memorandum In Support of Motion to Dismiss*" requesting that the Court grant the instant motion to dismiss the declaratory judgment action filed by Plaintiffs, Backoff, LLC and NuTec, Inc., due to lack of subject matter jurisdiction over the asserted claims, lack of personal jurisdiction over Samoco, and for failure to state a claim upon which relief can be granted, with prejudice.

## I.      BACKGROUND

Samoco is a Texas corporation with its principal place of business in Houston, Texas. (Hellail Declaration, Exhibit A, p. 1, ¶ 2). Samoco does not do and has never done business in Louisiana. Samoco has not made any sales to consumers in Louisiana, solicited the sale of products in Louisiana, advertised in Louisiana, shipped any products to Louisiana, entered into any contracts in Louisiana, or leased any products for use in Louisiana. Samoco has no business operations or offices in the State of Louisiana, does not have a Louisiana phone number or mailing address, does not own or maintain any property in Louisiana, does not have any licensees or franchisees in the State of Louisiana, does not have any distributors in Louisiana, does not maintain a bank account in Louisiana, and has no officers, agents, or employees in the State of Louisiana. (Exhibit A, p. 3, ¶¶14-17).

Samoco's president, Michael Jeremey "MJ" Hellail, along with two co-inventors, filed a patent application for certain tools that allow for testing of blowout preventers ("BOP") used in connection with oil and gas wells. On December 12, 2017, the United States Patent & Trademark Office issued U.S. Patent No. 9,841,343 ('343 Patent) covering this proprietary technology. All of the actual inventors assigned their entire rights to the '343 Patent to Samoco.  (Exhibit A, p. 1, ¶¶

1

3-4). Jay Tchamanzar of Aldwych Capital Partners LLC ("Aldwych Capital"), an M&A advisory firm with offices in Houston and New York, assisted Samoco with exploring opportunities to partner with other entities. Mr. Tchamanzar contacted Plaintiffs and brokered a meeting between the parties to discuss whether there was any mutual interest in a possible merger, joint venture, or asset purchase arrangement. In spite of Mr. Tchamanzar initially requesting that the meeting be held via telephone, Plaintiffs insisted that the meeting be held in Lake Charles, Louisiana, and Samoco agreed. (Exhibit A, p.2, ¶6; Exhibit A-1, p. 2).

On December 13, 2017, the parties met in Lake Charles to discuss whether there was any potential for an agreement. At no time before, during, or after such meeting did any Samoco representative ever state, suggest, or imply that either NuTec or Backoff was infringing Samoco's patent. In fact, the meeting between the parties was brief, cordial, informal and lasted no more than an hour. (Exhibit A, p.2 ¶¶ 6, 7, 9).

Shortly after this meeting, NuTec wrote to Mr. Tchamanzar to advise that:

"[W]e are ready to continue discussions we started when we met in Lake Charles. After review and discussion between the owners of NuTec, we feel there is some merit for NuTec to possibly obtain the assets of Samoco Oil Tools. We would only be interested in pursuing an asset sell/purchase and would not be interested in purchasing Samoco stock.  We would simply move Samoco's equipment into NuTec's inventory, if a deal could be made."  (Exhibit A-2, p. 3).

NuTec further advised that "Once this inspection is complete, we will be available to proceed with this proposal in a timely manner." *Id.* A few days later, NuTec reiterated that "[o]ur primary interest would be the assets related to the BOP tool as this could possibly merge with our current business model with little disruption." (Exhibits A-2, p. 3; Exhibit A-3, p. 1).

When Samoco advised NuTec and Backoff that it was not interested in selling its patented technology apart from the sale of the company as a whole, Plaintiffs responded by filing this lawsuit seeking a declaration that Samoco's patent is invalid and unenforceable. Evidently,

Plaintiffs believe that their technology infringes Samoco's patent and have raced to the courthouse in order to secure what they believe to be a more favorable jurisdiction. In reality, Plaintiffs lured Samoco to Louisiana under the false pretense that Plaintiffs were interested in either purchasing or merging with Samoco in a desperate attempt to establish personal jurisdiction in Louisiana. Then, shortly after the meeting concluded, Plaintiffs filed suit, even though there has never even been an explicit or implied threat by Samoco that Plaintiffs infringe the Samoco patent.

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. §2201

### A. Applicable Law

The Declaratory Judgment Act, 28 U.S.C. 2201, provides in part that:

"In a case of *actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (Emphasis added).

As indicated above, 28 U.S.C. §2201 requires that a "case of actual controversy" exist between the parties before a federal court may exercise jurisdiction. The standard for determining whether an actual controversy exists pursuant to 28 U.S.C. §2201 was revised by the U.S. Supreme Court in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007). In analyzing subject matter jurisdiction over declaratory judgment claims, a court should determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.  28 U.S.C. §2201 provides that a court "may declare the rights and other legal relations of any interested party," but it is not compelled to do so. Therefore, 28 U.S.C. §2201

has long been interpreted to grant federal courts substantial discretion in deciding whether to grant declaratory relief. *See MedImmune* at 136.

Since *MedImmune*, the Federal Circuit has cautioned that the new standard does not obviate the requirement for a plaintiff to be objectively threatened in order to seek declaratory relief:

> "Although *MedImmune* clarified that an injury-in-fact sufficient to create an 'actual controversy' can exist even when there is no apprehension of a lawsuit, it did not change the longstanding rule that a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the declaratory judgment defendant. Whether there is a real and immediate injury or threat of future injury is an objective standard that cannot be met by a purely subjective or speculative fear of future harm. Thus, as we explained post-*MedImmune*, 'jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. A case or controversy must be 'based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*--an objective standard that cannot be met by a purely subjective or speculative fear of future harm.'" *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1339 (Fed. Cir. 2008), citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007).

A decision as to whether an actual controversy exists in the context of a patent declaratory judgment claim "will necessarily be fact specific and must be made in consideration of all the relevant circumstances." *MedImmune* at 127. The burden is on the party asserting declaratory judgment jurisdiction to establish the existence of an Article III case or controversy. *See Danisco U.S. Inc. v. Novozymes A/S,* 744 F.3d 1325, 1329 (Fed. Cir. 2014).

Finally, in deciding this motion, the Court has the authority to consider extrinsic evidence, such as correspondence and affidavits, and is not limited to the four corners of the complaint. "A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a 'facial' attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a 'factual' attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned." *Diaz v. Castro*, 122 F. Supp. 3d 603, 607 (S.D. Tex. 2014), citing *In*

4

*re Blue Water Endeavors, LLC*, 2011 WL 52525, *3 (Bankr. E. D. Tex. 2011) and *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878–79 (N.D. Tex. 1998), aff'd, 199 F.3d 279 (5th Cir. 2000). With a factual attack, the Court may consider extrinsic evidence, such as affidavits, testimony and other documents, that is relevant to the issue of subject matter jurisdiction. *See Diaz* at 608, citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir.1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981). When a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist. *See Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir.1981). In resolving a factual attack, the district court has significant authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986); *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

### B. Argument

As set forth above, Plaintiffs have the burden of proving that an actual case or controversy exists, including that Defendant committed some affirmative act that created an objective fear of immediate injury. Plaintiffs have not remotely demonstrated an actual case or controversy in this matter. Plaintiffs' sole basis for invoking subject matter jurisdiction is a meeting between the parties on December 13, 2017, in Lake Charles, Louisiana. The meeting was brokered by Jay Tchamanzar of Aldwych Capital to determine if there may be mutual interest in a merger, a joint venture, or an outright purchase of Samoco's assets relative to the BOP tool. At no time before,

during, or after such meeting, did any Samoco representative ever state, suggest, or imply that either NuTec or Backoff was infringing Samoco's patent. (Exhibit A, ¶ 7). And, Plaintiffs have produced no evidence whatsoever of an actual or implied threat of infringement and have provided absolutely no details as to how such threat was conveyed or suggested. Instead, the Plaintiffs only proffer conclusory statements that "representatives" of Defendant "asserted its Samoco patent against Plaintiffs contending the coverage of the Samoco patent over the Samoco tool, . . . and the alleged validity of the enforceability of the Samoco patent." (R.Doc. 1, pp. 8-9, §41).  Plaintiffs further contend that the cordial, informal discussions somehow "place a cloud of uncertainty and doubt over the practices of Plaintiffs, which actions will persist absent a resolution of determining the validity or invalidity of the Samoco Patent."  (R.Doc. 1, p. 9, §44). Plaintiffs make these vague and unsubstantiated allegations even though they admit that during "said meeting, Defendant's representatives expressed their desire and intent of a joint-venture, complete or partial merger, and/or licensing agreement between Plaintiffs, particularly NuTec, and Defendant, based solely upon the Samoco Tool and Samoco Patent." (Rec Doc. 1, p. 9, §42). Plaintiffs fail to explain how a meeting to discuss a merger or joint venture is possibly a threat or otherwise an assertion of its patent. Plaintiffs offer no other factual details or any documentary evidence whatsoever that remotely suggests an actual case or controversy.

Not only do Plaintiffs fail to produce any evidence of or even plead an actual controversy, the communications between the parties both before and after the meeting of December 13, 2017, do not remotely suggest any sort of threat of injury or harm. Instead, both parties clearly expressed a desire to reach an agreement wherein Plaintiff NuTec would purchase at least some of Samoco's assets. For example, in an email communication dated December 6, 2017, Mr. Tchamanzar indicated that the meeting would be primarily to discuss "strategic options, such as technology

licensing, JV, business combination (whole or partial), etc." (Exhibit A-1, p. 3). In response, Brian Williams of Defendant NuTec suggested that the parties should meet in person in Lake Charles instead of simply conferring telephonically. (Exhibit A-1, p. 2).

By letter dated January 25, 2018, over one month after the purported threatening meeting, J. Terrell Williams of NuTec notified Mr. Tchamanzar that:

> "[W]e are ready to continue discussions we started when we met in Lake Charles. After review and discussion between the owners of NuTec, we feel there is some merit for NuTec to possibly obtain the assets of Samoco Oil Tools. We would only be interested in pursuing an asset sell/purchase and would not be interested in purchasing Samoco stock.  We would simply move Samoco's equipment into NuTec's inventory, if a deal could be made."

(Exhibit A-2, p. 3). Mr. Williams further advises that "Once this inspection is complete, we will be available to proceed with this proposal in a timely manner." *Id.*

Again by email dated January 29, 2018, Brian Williams of NuTec stated that "Our primary interest would be the assets related to the BOP tool as this could possibly merge with our current business model with little disruption." (Exhibit A-3, p. 1). It is inconceivable that during the meeting of December 13, 2017, Samoco in any way "asserted its patent," "placed a cloud of uncertainty and doubt over the practices of Plaintiffs," or otherwise implied any threat of future injury when NuTec continued to express sincere interest in purchasing Defendant's assets almost six weeks after the meeting. Both parties conveyed an interest in reaching an agreement both before and after the meeting and continued to negotiate well after the purported "assertion" of patent rights. Plaintiffs' insistence that the meeting somehow created a justiciable controversy is specious and unsupportable.

Plaintiffs also incredulously allege that "Defendant, through the marketing and selling of its Samoco Tool, is attempting to capture a significant market share in the BOP test tool market, particularly in relation to fulfilling tests of BOPs in a single trip. In doing so, Defendant is

attempting to coerce Plaintiffs into a joint-venture, complete or partial merger, and/or licensing agreement with Defendant by asserting the Samoco Patent against Plaintiffs." (R.Doc. 1, p. 9, §43). As with the other allegations, Plaintiffs have provided no specific allegations or produced any evidence that Defendant has ever attempted "to capture a significant market share" or attempted "to coerce Plaintiffs into a joint-venture, complete or partial merger, and/or licensing agreement with Defendant by asserting the Samoco Patent against Plaintiffs." Furthermore, Plaintiffs cannot possibly show that "attempting to capture a significant market share" remotely creates a case or controversy in order to establish subject matter jurisdiction under the Declaratory Judgment Act. As the correspondence between the parties indicates, Plaintiffs were as interested in a mutual agreement as Defendant. More problematic for the Plaintiffs, however, is that their self-serving allegations do not establish a justiciable controversy. At most, Plaintiffs' allegations simply reveal a subjective, paranoid belief that the mere existence of Samoco's patent somehow poses a threat. However, a subjective, irrational fear of injury does not create the type of case or controversy necessary to establish this Court's subject matter jurisdiction.

Even if Defendant somehow had "asserted" its patent during the meeting, which is categorically denied, such activity would still not rise to the level of a justiciable case or controversy pursuant to 28 U.S.C. §2201. In *Solenoid Devices, Inc., v. Ledex, Inc.*, 375 F.2d 444 (9th Cir. 1967), a case directly on point, the parties met to discuss Ledex possibly purchasing the assets of Solenoid. When the negotiations terminated, Solenoid immediately filed a declaratory judgment action seeking a determination of non-infringement. In affirming the trial court's dismissal for lack of subject matter jurisdiction, the court of appeal noted that the dispute was merely in the "jawbone" stage during the negotiations:

> "Of course, there must be an actual controversy to get subject matter jurisdiction. Here that would probably mean a controversy appropriate for decision, not a

question of naked power such as would be involved in a federal court attempting to grant a divorce. The banter between the parties, short of a threat to file a suit or harassing or threatening to harass the trade (the purchasers of the devices), goes far to undercut the requisites of an actual controversy. It would appear to us that this situation of having only a business argument justified the court in rejecting the complaint. In the federal declaratory judgment cases, the word "may" has never been held to uniformly mean "shall." Of course, there are cases where the district court can abuse its discretion in refusing to entertain a declaratory action. We find this not to be one." *Id.* at 445.

In this case, there is not a shred of evidence, or even any unsubstantiated allegations that Defendant ever explicitly or tacitly threatened Plaintiffs with patent infringement.  As the pertinent case law indicates, the mere existence of a patent does not create a case or controversy for purposes of obtaining a declaratory judgment. As one district court recently noted:

> "In the end, this close decision is swung by two primary factors. The first is that in nearly all of the key patent cases cited by the parties in which courts have found subject matter jurisdiction to exist regarding a declaratory judgment claim, the patent holder took far clearer, hostile action related to the patent at issue than have Plaintiffs here. And the second is the nature of the burden - it is Defendants' burden to convince the Court why, though they have never been threatened with litigation over these two patents, circumstances suggest an imminent and real threat in the future. For the reasons expressed above (particularly with regard to addressing the differences among the patent claims at issue), Defendants have not sufficiently done so here." *Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*, 2014 WL 4222902 at *4 (D. Del. 2014).[1]

---

[1]The court cited numerous Federal Circuit cases wherein a party also engaged in affirmative or hostile conduct, such as, *Danisco U.S. Inc. v. Novozymes A/S,* 744 F.3d 1325, 1329 (Fed. Cir. 2014); (finding jurisdiction to exist, *inter alia,* where record demonstrated that patent holder sought the patent "because it believed that [claimant's] products would infringe once the claim issued" and "with the hopes of asserting it against" claimant's products, and also where the patent holder insisted on multiple occasions that the patent at issue read on and claimed a compound that was the active compound in the claimant's identified products); *Arris Grp., Inc. v. British Telecommc'ns, PLC,* 639 F.3d 1368, 1376-77 (Fed. Cir. 2011) (finding jurisdiction to exist, *inter alia,* where the patentee had accused claimant's customer of direct infringement of the patents at issue, had singled out the customer's use of the claimant's products in making those allegations, and where the claimant was directly involved in its customer's licensing negotiations with the patent holder in which the claimant and the patent holder exchanged infringement and non-infringement arguments regarding the patents at issue); *Teva Pharms. USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330, 1340-41 (Fed. Cir. 2007) (finding jurisdiction to exist in an Abbreviated New Drug Application ("ANDA") case where, *inter alia,* the patent holder listed the patents at issue in the Orange Book as covering the drug at issue, the claimant later certified that the listed patents were invalid under paragraph IV, and the patent holder thereafter sued claimant on another patent that was listed in the Orange Book with the patents at issue); *Plumtree Software, Inc. v. Datamize, LLC,* 473 F.3d 1152, 1156, 1159-60 (Fed. Cir. 2006) (finding jurisdiction to exist, *inter alia,* where the patentee had previously sent a letter to the claimant stating that it

The court in *Idenix* believed that of paramount importance was the fact that Plaintiffs had never sued the defendants for patent infringement and never directly threatened them with such a suit. In this matter, Plaintiffs have not alleged any hostile or affirmative activity on the part of Defendant and do not describe or show any explicit or implied threat in their vague complaint; instead, Plaintiffs have merely demonstrated that the parties met to discuss a potential partnership and that somehow such meeting constitutes an assertion of patent rights or creates a threat of injury. In fact, the only documentary evidence of record herein clearly indicates that Plaintiffs and Defendant were mutually interested in pursuing a joint venture well after their meeting on December 13, 2017. Therefore, Plaintiffs have not remotely carried their burden to show that an actual case or controversy exists so as to confer subject matter jurisdiction. Plaintiffs ask the Court to impose subject matter jurisdiction simply because Defendant was issued a patent.  To allow a declaratory judgment action to proceed under such circumstances could potentially expose all patentees to relentless, burdensome litigation.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER SAMOCO

Federal Circuit law governs personal jurisdiction questions in patent actions, including declaratory judgment actions. *See Avocent Huntsville Corp. v. Aten Int. Co. Ltd.,* 552 F.3d 1324, 1328 (Fed. Cir. 2008). When a defendant disputes personal jurisdiction and the parties have not yet conducted discovery, the plaintiff must make a *prima facie* showing that the defendant is subject to personal jurisdiction. *See id.* at 1328-29; *see also Luv N' Care v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). The determination depends upon two inquiries: (i) whether the

---

believed the claimant will infringe the claims of an application that later issued as one of the patents at issue, and where the patentee later directly stated its belief that claimant was infringing both of the patents at issue).

forum state's long-arm statute permits service of process; and (ii) whether the assertion of personal jurisdiction would violate due process. *See Avocent,* 552 F.3d at 1329; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd,* 566 F.3d 1012, 1017 (Fed. Cir. 2009).

A Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process. *See Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 270 (5th Cir. 2006). Because the limits of Louisiana's long-arm statute are coextensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over the defendant would offend due process. *See* LA. REV. STAT. ANN. § 13:3201(B); *Luv N' Care,* 438 F.3d at 469; *see also Electrosource, Inc. v. Horizon Battery Techs., Ltd,* 176 F.3d 867, 871 (5th Cir. 1999).

"The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant." *See Resolution Inc. of Del. v. Medical Bridges, Inc.,* Case No. 2:11-cv-02475-MLCF-SS, slip op. at 6 (E.D La. Sept. 20, 2012); *see also Avocent,* 552 F.3d at 1330. General jurisdiction exists "where contacts between the defendant and the forum state have been continuous and systematic to such an extent that the exercise of personal jurisdiction is justified." *See Resolution,* Case No. 2:11-cv-02475-MLCF-SS, slip op. at 6 (citing *Dickson Marine, Inc. v. Panalina, Inc.,* 179 F.3d 331, 339 (5th Cir. 1999)); *Autogenomics,* 566 F.3d at 1017 ("General jurisdiction, on one hand, 'requires that the defendant have 'continuous and systematic' contacts with the forum state...''). Specific jurisdiction, on the other hand, employs a three-prong test to determine whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal

11

jurisdiction is reasonable and fair. *See Avocent,* 552 F.3d at 1332; *Autogenomics,* 566 F.3d at 1018; *see also Luv N' Care,* 438 F.3d at 469 (specific jurisdiction exists if plaintiff shows defendant has purposely directed its activities toward the forum state and that its cause of action arises out of or results from defendant's forum-related contacts). Once the plaintiff makes this preliminary showing, personal jurisdiction will lie so long as maintaining the suit will not "offend traditional notions of fair play and substantial justice." *Avocent,* 552 F.3d at 1332.

In a declaratory judgment action for non-infringement and/or invalidity, the plaintiff's claims arise out of the defendant's activities in enforcing the patent-in-suit, not out of the making, using, selling, offering to sell, or importing allegedly infringing products in the forum. *See id*. Thus, the relevant inquiry is thus "to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* at 1332 (citations omitted); *see also Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 789 (Fed. Cir. 2011). "Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." *Id.*

Here, Plaintiffs make several assertions regarding why personal jurisdiction is proper in this Court, the totality of which is as follows:

- "This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, Defendant and/or Defendant's agents regularly conduct commerce in the State of Louisiana, deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Louisiana, and particularly this district." (R.Doc. 1, ¶7).

- "This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, Defendant committed and continues to commit acts of imposing its invalid patent against Plaintiffs in the State of Louisiana, deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Louisiana, and particularly in this District." (R.Doc. 1, ¶8).

- "This United States District Court may exercise jurisdiction over Defendant on the ground that, *inter alia*, the conduct of Defendant and/or Defendant's agents as alleged herein caused and continues to cause injury to Plaintiffs in the State of Louisiana, and particularly in this District." (R.Doc. 1, ¶9).

- "During the aforementioned December 13, 2017 meeting, Michael Jeremy Hellail, the Chief Executive Officer of Samoco, and other representatives of Defendant, asserted its Samoco Patent against Plaintiffs, contending the coverage of the Samoco Patent over the Samoco Tool and other similar BOP test tools, including the BOP test tools of NuTec, and the alleged validity and enforceability of the Samoco Patent." (R.Doc. 1, ¶41).

- "During said meeting, Defendant's representatives expressed their desire and intent of a joint-venture, complete or partial merger, and/or licensing agreement between Plaintiffs, particularly NuTec, and Defendant, based solely upon the Samoco Tool and Samoco Patent." (R.Doc. 1, ¶42).

- "Defendant, through the marketing and selling of its Samoco Tool, is attempting to capture a significant market share in the BOP test tool market, particularly in relation to fulfilling tests of BOPs in a single trip. In doing so, Defendant is attempting to coerce Plaintiffs into a joint-venture, complete or partial merger, and/or licensing agreement with Defendant by asserting the Samoco Patent against Plaintiffs." (R.Doc. 1, ¶43).

- "Defendant's actions in relation to the Samoco Patent place a cloud of uncertainty and doubt over the practices of Plaintiffs, which actions will persist absent a resolution of determining the validity or invalidity of the Samoco Patent." (R.Doc. 1, ¶44).

The foregoing allegations evidence the fact that a business meeting occurred in which Samoco sought to enter into a business arrangement with Plaintiffs. Plaintiffs, rightly, do not contend that Samoco threatened Plaintiffs with a lawsuit, nor do they allege that Samoco asserted that Plaintiffs were infringing Samoco's patent. Thus, Plaintiffs' allegations fail to satisfy their burden to establish personal jurisdiction for any of its claims, which is premised solely on the aforementioned business meeting.

As an initial matter, Samoco is not subject to "general" personal jurisdiction in Louisiana. General jurisdiction applies only when a defendant has "continuous and systematic" contacts with

13

the forum state that "approximate physical presence" in the state. *Autogenomics,* 566 F.3d at 1017; *see also Resolution,* Case No. 2:11-cv-02475-MLCF-SS, slip op. at 6. Other than Plaintiffs' bald allegation that "Defendant and/or Defendant's agents regularly conduct commerce in the State of Louisiana" (R.Doc. 1, ¶7), Plaintiffs fail to identify any actual contacts between Samoco and Louisiana that could satisfy the "continuous and systematic" standard, as no such "continuous and systematic" contacts exist. Samoco has never made any sales to consumers in Louisiana, advertised in Louisiana, maintained any office, employees, bank accounts, or other physical presence in Louisiana, and has never been licensed to do business in Louisiana. (Exhibit A, ¶¶ 14-19). "Rather, this 'is a classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendant[] in the forum.'" *Autogenomics,* 566 F.3d at 1017 (citation omitted); *see Resolution,* Case No. 2:11-cv-02475-MLCF-SS, slip op., at 8-9 (finding no general jurisdiction where defendant did not maintain on-going business operations in Louisiana); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416-18 (1984). Accordingly, Plaintiffs have not, and cannot, meet their burden of showing a *prima facie* case of general personal jurisdiction over Samoco.

Samoco is also not subject to "specific" personal jurisdiction in Louisiana in connection with this action. To meet its burden, Plaintiffs must demonstrate that Samoco purposefully directed its activities at residents of Louisiana, and that the litigation results from alleged injuries that arise out of or relate to those activities. *See Avocent,* 552 F.3d at 1330; *Luv N' Care,* 438 F.3d at 469. The only purposeful activity of Samoco that relates in any way to Louisiana was Samoco's decision to accept Plaintiffs offer to attend a business meeting in Lake Charles to discuss a possible merger, joint venture, or asset purchase agreement. (Exhibit A, ¶¶ 6, 9; R.Doc. 1, ¶ 42).

14

This activity, however, is insufficient as a matter of law to subject Samoco to personal jurisdiction in Louisiana.

At best, the allegations in the instant lawsuit merely claim that Samoco provided Plaintiffs with notice of its patent rights. However, the Federal Circuit has determined that: "Standards of fairness demand that [the patentee] be insulated from personal jurisdiction in a distant forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Red Wing Shoe,* 148 F.3d 1355, 1361 (Fed. Cir. 1998). Moreover, "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 566 F.3d at 1020. Plaintiffs do not allege that Samoco accused Plaintiffs of infringing its patent rights. Even if Samoco had taken this additional step, the Federal Circuit has repeatedly held that contacts with a resident of a forum apprising the resident of alleged infringement do not subject the patentee to personal jurisdiction for a declaratory judgment action in that forum. *See Autogenomics,* 566 F.3d at 1015, 1021 (no personal jurisdiction despite sending assertion letters to the alleged infringer followed by a personal meeting in the forum state regarding the assertion); *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351, 1356 (Fed. Cir. 2002) ("Fairness and reasonableness demand that a patentee be free to inform a party who happens to be located in a particular forum of suspected infringement without the risk of being subjected to a law suit in that forum."); *see also Radio Sys. Corp.,* 638 F.3d at 789 ("[O]rdinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state."); *cf. McFadin v. Gerber,* 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); *Freudensprung v. Offshore Technical Servs.,*

*Inc.,* 379 F.3d 327, 344 (5th Cir. 2004) ("[The Fifth Circuit] has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish minimum contacts.").

"Thus, '[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit.'" *Avocent,* 552 F.3d at 1333 (citation omitted). "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id* at 1334 (citations omitted); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1366 (Fed. Cir. 2006); *Campbell Pet Co. v. Miale,* 542 F.3d 879, 886-87 (Fed. Cir. 2008) (personal jurisdiction existed where defendant attempted "extra-judicial patent enforcement" and "took steps to interfere with the plaintiff's business" by attempting to have plaintiff's allegedly infringing products removed from a convention in the forum state); *Akro Corp. v. Luker,* 45 F.3d 1541, 1543-48 (Fed. Cir. 1995) (personal jurisdiction existed where, in addition to sending six warning letters accusing the plaintiff of infringement, the patentee granted an exclusive license to one of the plaintiffs competitors in the forum state that "empowered [the competitor] to sue on [the patentee's] behalf."). No such "other activities" occurred here, nor has Plaintiffs asserted any.

Accordingly, because Samoco is not subject to either "general" or "specific" personal jurisdiction, Plaintiffs' Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## IV.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if this Court had subject matter jurisdiction over the instant lawsuit and Samoco were somehow subject to personal jurisdiction here, Plaintiffs' Complaint should nevertheless be dismissed for failure to state a claim upon which relief can be granted. In Plaintiffs' rush to file their declaratory judgment complaint, Plaintiffs omitted the requisite factual allegations plausibly showing that it is entitled to the declaratory judgment and other relief it seeks.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (citations omitted). While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citation omitted). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 555, 127 S. Ct. 1955). Thus, a complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal,* 129 S. Ct. at 1950 (citing *Twombly,* 550 U.S at 556, 127 S. Ct. 1955). In that regard, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.... Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted).

Here, Plaintiffs' Complaint purports to state causes of action for declaratory judgment of invalidity and unenforceability of Samoco's '343 Patent. That said, Plaintiffs have not asserted that they were threatened with patent infringement, nor are they seeking a declaration of non-infringement with respect to their own patents. Consequently, Plaintiffs have not demonstrated adequate standing to bring the instant claims. *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.,* 756 F.3d 327, 332 (5th Cir. 2014) (holding that, to the extent statutory standing was lacking, the federal claims should have been dismissed under Rule 12(b)(6) rather than for lack of jurisdiction.) Moreover, to the extent Plaintiffs intended to seek a declaratory judgment that they do not indirectly infringe Samoco' patent, Plaintiffs' pleading falls woefully short of the Federal Circuit's pleading standard. *See In re Bill of Lading Transmission and Processing System Patent Litigation,* 681 F.3d 1323, 1337, 1339 (Fed. Cir. 2012).

Plaintiffs' claims seeking a declaratory judgment of invalidity and unenforceability also fail to state a claim. Plaintiffs' Complaint does little more than cite generally to the patent statute,[2] and asserts, without elaboration, that "each claim of the Samoco Patent is invalid in view of prior art references and/or the knowledge of a person of ordinary skill in the art, and/or for failure to comply with the provisions of 35 U.S.C. § 112." (R.Doc. 1, ¶ 58). The details of which prior art references serve to invalidate Samoco's patent and/or how Samoco supposedly failed to comply with 35 U.S.C. § 112 is anyone's guess. Such general averments do not satisfy the requirements of *Twombly* and *Iqbal. See Memory Control Enterprise, LLC v. Edmunds.com, Inc.,* No. CV 11-

---

[2] R.Doc. 1, ¶ 57 ("The Samoco Patent is invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. § 101, including but not limited to 35 U.S.C. §§ 102, 103, and 112.")

7658, 2012 WL 681765, at *3 (C.D. Cal. Feb. 8, 2012) ("Merely reciting possible ways that a patent can be held invalid, stated in such a conclusory manner, with absolutely no facts supporting it, hardly provides fair notice to Plaintiff. Further, Defendant identifies no subsections in either its counterclaim or its affirmative defense."); *Internet Media Corp. v. Hearst Newspapers, LLC,* No. 10-690, 2012 WL 3867165, at *2 (D. Del. Sept. 6, 2012) (dismissing invalidity counterclaims); *see also Ferring, B.V. v. Watson Labs., Inc.,* Civ. Nos. 3:11-cv-481, 3:11-cv-485, 3:11-cv-853 & 3:11-cv-854, 2012 WL 607539, at *3 (D. Nev. Feb. 24, 2012) (dismissing counterclaims reciting "35 U.S.C. §§ 101, 102, 103 and/or 112" because "they do not include any facts whatsoever making invalidity plausible as required by Rule 8(a)"). Thus, Plaintiffs' counterclaims for a declaratory judgment of patent invalidity and unenforceability should be dismissed.

## CONCLUSION

WHEREFORE, Samoco Oil Tools, Inc. prays that this Honorable Court enter an order dismissing the instant declaratory judgment lawsuit on the grounds that the Court lacks subject matter jurisdiction, the Court lacks personal jurisdiction over Samoco, and/or on the basis that the claims and allegations in the Complaint fail to state a claim upon which relief can be granted.

Respectfully Submitted:

*/s/ Brad E. Harrigan*
Brad E. Harrigan (La. Bar No. 29592) (T.A.)
Kenneth L. Tolar (Bar No. 22641)
TOLAR HARRIGAN & MORRIS LLC
1055 St. Charles Avenue, Suite 208
New Orleans, Louisiana  70130
Telephone:  (504) 571-5317
**ATTORNEYS FOR DEFENDANT,
SAMOCO OIL TOOLS, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June, 2018, a copy of the foregoing was served upon

all known counsel of record via the Court's CM/ECF filing system and or electronic mail.

*/s/ Brad E. Harrigan*
Brad E. Harrigan (La. Bar No. 29592) (T.A.)